## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **TRADITIONS HEALTH, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 24-CV-0163-CVE-MTS** |
| | ) | |
| **DONALD HUFFMAN, SHARON REED,** | ) | |
| **KAYCEE FUNK, TRICIA MENEFEE,** | ) | |
| **RAMONA PERRY, LUMINOS** | ) | |
| **OPCO2, LLC, and EVERGREEN** | ) | |
| **HOSPICE, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### OPINION AND ORDER

Now before the Court are Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. # 40), and Plaintiff Traditions Health, LLC's Motion to Strike or Disregard New Arguments in Defendants' Reply Brief (Dkt. # 61). Defendants argue that plaintiff Traditions Health, LLC (Traditions) has failed to state any claim upon which relief can be granted, and they assert that Traditions lacks standing to enforce the employment agreements that give rise to the breach of contract claims alleged in the amended complaint. Dkt. # 40. Traditions responds that it is the parent company of the subsidiary entities that directly employed the individual defendants, and it has standing to enforce the contractual agreements of its "affiliates." Dkt. # 49, at 10-12. Traditions also asserts that it has adequately alleged numerous claims against defendants based on their misuse of Traditions' trade secrets and proprietary information. Id. at 14-31.

### I.

Traditions provides home health care, palliative care, and hospice services in 18 states, including Oklahoma, and Traditions' services in Oklahoma are provided by two subsidiaries

organized as Traditions Hospice of Edmond, LLC and Traditions Hospice of Tulsa, LLC.  Dkt. # 32, at 5.  Traditions alleges that it has a centralized organizational structure, and it exercises management and financial control over its subsidiaries.  Id.  Traditions alleges that it provides palliative care "focuse[d] on anticipating, preventing, and treating suffering, while improving comfort and quality of life for patients with advanced or complex diseases," and the company also provides hospice care for patients approaching the end of their life.  Id.  Traditions states that it maintains confidential business information and trade secrets, which generally includes information concerning the identity and compensation of employees, patient names and contact information, as well as financial information and marketing strategies.  Id. at 5-6.  Employees of Traditions have access to portions of this information depending upon their job responsibilities, and account executives can review patient information only for those patients assigned to them.  Id. at 7.  Employees must sign confidentiality agreements and post-employment restrictive covenants in order to gain access to information that Traditions deems confidential or trade secrets.  Id. at 8.

Traditions has named individuals Donald Huffman, Sharon Reed, Kaycee Funk, Tricia Menefee, and Ramona Perry among the defendants in this case.  Huffman worked for Traditions from September 2020 to February 2024 as a regional director of sales.  Id. at 10.  Huffman signed a "Confidential Information, Nonsolicitation and Invention Assignment Agreement" under which he agreed not to disclose or disseminate any confidential information or trade secrets of Traditions except as required by the performance of his job duties.  Id. at 51.  The agreement describes "confidential information" as:

> the Company's unique selling and servicing methods and business techniques, trade secrets, training, service and business manuals, promotional materials, training courses and other training and instructional materials, vendor and product information, customer and prospective customer lists, supplier information, any and

> all software programs (whether or not completed or in use), other customer and prospective customer information, other business information and all analyses, compilations, data, studies, notes, interpretations, memoranda or other documents prepared or provided by Company's directors, officers, employees, shareholders, agents, consultants and advisors ("Representatives") containing or based in whole or in part on any such furnished information, including any information that may be considered privileged or attorney-client work product ("Confidential Information").

Id. at 52. Certain information is not considered confidential information if it was already in the possession of the employee, was known to the general public, was received wholly independently of the employment, or developed by the employee without the benefit of Traditions' confidential information. Id. Huffman agreed to return any documents and other materials belong to Traditions at the conclusion of his employment. Id. at 54. Huffman's employment agreement also included a non-competition provision:

> I agree that during the term of my Relationship with the Company, and for a period of twelve (12) months immediately following the termination of my Relationship with the Company for any reason, whether with or without cause, I shall not directly or indirectly solicit, induce, recruit, or encourage any of the Company's employees or consultants to terminate their relationship with the Company, or attempt to solicit, induce, recruit, or encourage employees or consultants of the Company, or otherwise attempt to take away employees or consultants of the Company, either for myself or for any other person or entity.

Id. at 55. The employment contracts of Reed, Funk, and Perry contain identical provisions concerning the use of Traditions' confidential information and non-competition. Menefee signed an employee confidentiality agreement acknowledging that she would have access to confidential information belonging to Traditions, and Menefee agreed to the following terms:

> A.   I will use and disclose confidential health information only in connection with and for the purpose of performing my assigned duties.
>
> B.   I will request, obtain or communicate confidential health information only as necessary to perform my assigned duties and shall refrain from requesting, obtaining or communicating more confidential health information than is necessary to accomplish my assigned duties.

      C.      I will take reasonable care to properly secure confidential health information on my computer and will take steps to ensure that others cannot view or access such information. When I am away from my workstation or when my tasks are completed, I will log off my computer or use a password-protected screensaver in order to prevent access by unauthorized users.

      D.      I will not disclose my personal password(s) to anyone without the express written permission of my department head or record or post it in an accessible location and will refrain from performing any tasks using another's password.

      E.      I will document all disclosures of confidential information, including those authorized by clients of Traditions Health and any accidental disclosures, in the appropriate client's file.

Id. at 81. There are no allegations suggesting that Menefee signed a non-solicitation or non-competition agreement with Traditions.

Traditions alleges that Huffman, Reed, Funk, Menefee, and Perry conspired with defendant Luminos OpCo2, LLC,[1] a newly formed competitor, to damage Traditions' reputation and harm its business. Luminos allegedly solicited Reed and Menefee to recruit employees of Traditions to work for Luminos, and Traditions has identified six employees who were allegedly solicited to move from Traditions to Luminos by Reed and Menefee. Id. at 21. Menefee and Funk allegedly engaged in conduct designed to harm Traditions' relationship with at least two referral facilities, and Traditions alleges that Funk subsequently appeared at a facility in Prague, Oklahoma attempting to solicit referrals on behalf of Luminos. Id. at 22. Traditions received notice from S.J., a Traditions employee based in Seminole, Oklahoma, that Menefee was trying to recruit Traditions' employees to work for Luminos, and Menefee was trying to avoid sending text messages that could be

---

[1]     The amended complaint identifies Luminos OpCo2, LLC and Evergreen Hospice, LLC as defendants and refers to these parties as "collectively Luminos." Dkt. # 32, at 1, 3. Evergreen Hospice, LLC is never specifically identified in any additional factual allegations or claims. The Court will refer to Luminos OpCo2, LLC and Evergreen Hospice, LLC as "Luminos" for the purpose of this Opinion and Order.

discovered in subsequent litigation. Id. Reed and Menefee convinced A.C. to leave her employment with Traditions by convincing A.C. that Traditions had eliminated her position, and Reed allegedly provided Traditions a fictitious cell phone number for A.C. that prevented Traditions from contacting A.C. to let her know that she was still employed by Traditions. Id. Traditions also began to see a decrease in the number of patients at its Chandler, Oklahoma office, and Traditions alleges that Huffman, Funk, and/or Perry were withholding patient referrals from Traditions before they had formally left for employment with Luminos. Id. at 23.

Huffman, Reed, Menefee, Funk, and Perry all resigned from their employment with Traditions at the end of January 2024 or the beginning of February 2024, and Traditions alleges that Huffman in particular accessed confidential business information belonging to Traditions at an unusually high rate shortly before he resigned. Id. at 25. Huffman allegedly continued to access confidential business information after he had left Traditions, including account lists, physician lists, market share data and projections, quarterly sales reports, and training materials. Id. at 26. Reed and Perry also accessed and downloaded confidential business information in their final days of employment with Traditions. Id. at 26-27. Traditions alleges that Huffman, Reed, and Perry have used the confidential business information or trade secrets to unfairly compete against Traditions on behalf of their new employer, Luminos. Id. at 27. The amended complaints identifies numerous examples in which patients transferred from Traditions to Luminos, including at least one patient that could not have been independently identified by Luminos without access to Traditions' client lists. Id. at 28-31.

On February 27, 2024, Traditions sent Huffman, Reed, and Funk a letter reminding them of their duty to maintain the confidentiality of Traditions' business information and trade secrets, and

Traditions also asked them to return any confidential business information belonging to Traditions that was in their possession. Id. at 32-33. Traditions alleges that the individual defendants have not ceased in their efforts to use Traditions' confidential business information to steal clients on behalf of Luminos. Traditions filed this case alleging that Huffman, Reed, Funk, and Perry breached the non-solicitation provisions of their employment contracts, and Traditions alleges that all of the individual defendants violated the non-disclosure provisions of their contracts (count 1 and 2). Id. at 33-36. Traditions alleges that "defendants" violated the federal Defend Trade Secrets Act, 18 U.S.C. § 1831 et seq. (DTSA), and the Oklahoma Uniform Trade Secret Act, OKLA. STAT. tit. 78, § 85 et seq. (OUTSA) (count 3 and 4). Traditions also alleges state law claims of misappropriation of intangible property (count 5), tortious interference with existing contractual and business relations (count 6), unfair competition (count 7), breach of fiduciary duty (count 8), and civil conspiracy (count 9).[2] Traditions requests injunctive relief prohibiting the individual defendants from violating their employment agreements by using Traditions' confidential business information to benefit Luminos, and Traditions demands that defendants be required to return any confidential business information in their possession. Id. at 48. Traditions seeks access to any accounts or devices utilized by the defendants to disseminate or share Traditions' confidential information or trade secrets to

---

[2]        After carefully reviewing the amended complaint, the Court finds that it is unclear which claims are asserted against each of the defendants. It seems that the breach of contract claims (counts 1 and 2) are asserted against the individual defendants and not Luminos. However, beyond counts 1 and 2, the amended complaint refers to "defendants" and the "individual defendants" interchangeably throughout the claims, and it is unclear whether Traditions intends to assert certain claims against the individual defendants or all of the named defendants. For the purpose of this Opinion and Order, the Court will assume that counts three, four, six, seven, and nine are asserted against all of the named defendants and that counts one, two, five, and eight are asserted against the individual defendants only. See Dkt. # 32, at 33-46.

determine the extent to which the individual defendants have shared such information with Luminos.[3] Id.

## II.

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 683 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to a claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual

---

[3]     The amended complaint also includes a section entitled "reformation and tolling" in which Traditions asks the Court to reform the restrictive covenants in the individual defendants' employment contracts in the event the Court concludes those restrictions are broader than permitted by the applicable law. Dkt. # 46-47.

averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

**III.**

The individual defendants argue that Traditions lacks standing to enforce the employment agreements against them, because Traditions is not a party to the agreements and it was not expressly designated as a third-party beneficiary. Dkt. # 40, at 10-12; Dkt. # 54, at 6. Defendants contend that Traditions has failed to clearly identify any trade secrets that were misappropriated by any specific defendant or how the misappropriation took place, and they assert that Traditions is unable to state a claim under the DTSA, the OUTSA, or for misappropriation of trade secrets. Id. at 13-16. Finally, defendants argue that Traditions' vague allegations concerning the alleged misappropriation of confidential business information do not support claims of tortious interference with prospective business relations or civil conspiracy under Oklahoma law. Id. at 18-23.

**A.**

The individual defendants argue that Traditions was not a party to the employment agreements with Huffman, Reed, Funk Menefee, or Perry, and they assert that Traditions lacks standing to brings claims seeking to enforce the non-solicitation provisions of the agreements. Dkt. # 40, at 9-10. Traditions responds that it is a third-party beneficiary of the employment agreements, because the agreements broadly define the term "company" to include affiliates and parent corporations as parties capable of enforcing them. Dkt. # 49, at 12. The Court notes that Menefee signed a different confidentiality agreement than Huffman, Reed, Funk, and Perry, and her agreement specifically names "Traditions Health" as a party to the contract. Dkt. # 32, at 81. This is a clear

reference to the named plaintiff and Traditions has standing to enforce the confidentiality agreement with Menefee.

Before reaching this argument, the Court must determine whether Texas or Oklahoma law applies to Traditions' claims arising under the employment agreements. Traditions asserts that the employment agreements contain a choice of law provision stating that "[t]he validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the State of Texas, without giving effect to the principles of conflict of laws." Dkt. # 32, at 56. In a diversity case, a federal district court applies the choice of law rules of the forum state. Pepsi-Cola Bottling Co. of Pittsburgh, Inc. v. PepsiCo., Inc., 431 F.3d 1241, 1255 (10th Cir. 2005). Under Oklahoma law, parties are free to specify the rules under which a contract will be enforced, and a choice of law provision will be enforced unless the contractual provision is illegal or contrary to the law or public policy of Oklahoma. Berry and Berry Acquisitions, LLC v. BFN Properties LLC, 416 P.3d 1061, 1068 (Okla. 2018). Courts have consistently found that Oklahoma maintains a strong public policy in opposition to the enforcement of restraints of trade, such as non-competition agreements, and courts have declined to apply contractual provisions selecting the laws of another state as applied to such agreements. TruGreen Limited Partnership v. Oklahoma Landscape, Inc., 526 F. Supp. 3d. 1080, 1088 (N.D. Okla. 2021) ; Southwest Stainless, L.P. v. Sappington, 2008 WL 918706 (N.D. Okla. Apr. 1, 2008); Oliver v. Omnicare, Inc., 103 P.3d 626, 628-29 (Okla. Civ. App. 2004). In Cardoni v. Prosperity Bank, 805 F.3d 573 (5th Cir. 2015), the court found that Oklahoma has a strong public policy against the enforcement of non-competition agreements, although it determined that a contractual provision selecting Texas law was applicable to other aspects of the parties' dispute. Id. at 585-88 (declining to apply a Texas choice of law provision to non-competition

9

provision of contract but finding that Oklahoma did not have a fundamental public policy in opposition to the enforcement of a non-solicitation agreement).

Defendants argue that Oklahoma courts refuse to enforce a choice of law provision when the law of another state would conflict with the strong Oklahoma public policy against restraints of trade.[4]  Dkt. # 54, at 3-4.  However, it does not appear that Traditions is actually seeking to enforce the non-competition provision of any of the employment agreements with defendants.  Traditions' claims are based on defendants' alleged misappropriation and misuse of Traditions' confidential business information, as well as defendants' alleged solicitation of Traditions' employees in violation of a non-solicitation agreement.  Therefore, Oklahoma's strong public policy in opposition to non-competition agreements does not prevent enforcement of the choice of law provision in the parties' employment contracts.  See Cardoni, 805 F.3d at 580-88 (Oklahoma has a strong public policy prohibiting choice of Texas law concerning the enforcement of a non-competition agreement, but the Fifth Circuit held that Oklahoma did not have a "fundamental" policy prohibiting the enforcement of non-solicitation agreements).  Defendants have not asserted any other argument in opposition to enforcement of the choice of law provision, and the Court finds that the choice of law provision is applicable to Traditions' claims (counts 1 and 2) seeking to enforce the employment contracts with the individual defendants.  The Court will apply Texas law when reviewing

---

[4]    Traditions claims that defendants' argument in opposition to enforcement of the choice of law provision was raised for the first time in defendants' reply and should be ignored or stricken.  Dkt. # 61.  However, Traditions' response to defendants' motion to dismiss first raised the issue that Texas law could be applicable to Traditions' claims, and defendants were permitted to respond with new arguments not contained in their motion to dismiss in order to rebut Traditions' choice of law argument.  The Court will consider the arguments concerning choice of law raised in defendants' reply, and Traditions' motion to strike or disregard these arguments (Dkt. # 61) is denied.

Traditions' breach of contract claims, including on the issue of whether Traditions has standing to enforce the employments contracts.

Under Texas law, the general rule is that "the benefits and burdens of a contract belong solely to the contracting parties, and 'no person can sue upon a contract except he be a party to or in privity with it.'" First Bank v. Brumitt, 519 S.W.3d 95, 102 (Tex. 2017) (quoting House v. Houston Waterworks Co., 31 S.W. 179, 179 (1895)). However, one exception to this general rule allows "a person who is not a party to the contract to sue for damages caused by its breach if the person qualifies as a third-party beneficiary." Id. Texas courts have a presumption against third-party beneficiary status, and a party will not be deemed a third-party beneficiary based only on an "indirect, incidental benefit" in the contract. Tawes v. Barnes, 340 S.W.3d 419, 425 (Tex. 2011). "To confer third-party beneficiary status, a contract must show that the contracting parties intended to secure a benefit to the third party and entered the contract directly for the third party's benefit." Allen v. Texas Children's Health Plan, 649 S.W.3d 830, 835 (Tex. App. 2022). "To determine the parties' intent, courts must examine the entire agreement when interpreting a contract and give effect to all the contract's provisions so that none are rendered meaningless." Stine v. Stewart, 80 S.W.3d 586, 589 (Tex. 2002). A third-party beneficiary does not have to be specifically named in the contract, but the contract must sufficiently designate or describe the intended third-party beneficiary. Maddox v. Vantage Energy, LLC, 361 S.W.3d 752, 757 (Tex. App. 2012).

Traditions argues that the employment agreements contain a provision defining "Company" as "Traditions Hospice of Edmond, a Limited Liability Company, on behalf of itself and any of its current or future subsidiaries, affiliates, successors or assigns." Dkt. # 32, at 51. The term "affiliate" is not defined in the contract, but Texas courts have considered whether a parent corporation can be

considered an "affiliate" of a subsidiary. In <u>MVT Services, LLC v. Robles</u>, 2024 WL 3034609 (Tex. App. June 17, 2024), the court examined numerous definitions of the term "affiliate" in determining whether the parties were bound by an arbitration agreement, because the document containing the arbitration agreement did not define "affiliate." <u>Id.</u> at *6-7. Each definition reviewed by the court included a parent corporation or a "corporation that is related to another corporation by shareholding or other means of control." <u>Id.</u> at *7. However, the mere fact that a parent corporation may qualify as an affiliate does not mean that the parent corporation qualifies as a third party beneficiary under Texas law. "[A]s a general proposition, a corporate parent is not a third party beneficiary of its subsidiary's contract merely by virtue of their relationship . . . ." <u>First Bank</u>, 519 S.W. 3d at 108 (quoting <u>Basic Capital Management, Inc. v. Dynex Commercial, Inc.</u>, 348 S.W.3d 894, 900 (Tex. 2011)).

Considering the employment agreement as a whole, the Court finds that the parties intended for Traditions to be treated as a third party beneficiary to the agreement. Huffman's employment agreement expressly states that Traditions Hospice of Edmond was entering a contract with the prospective employee "on behalf of itself and any of its current or future subsidiaries, affiliates, successors or assigns," and this is stated in the first sentence of the contract. Dkt. # 32, at 51. This provision broadly identifies the corporate identity of the employer, and the use of the term "affiliate" commonly has been interpreted to include a parent corporation. The provision concerning the confidentiality of business information is titled "Company Information," and references to the Company's trade secrets make substantially more sense when viewed as referring to the Traditions' business information, rather than just the Oklahoma entity that employed the individual defendants. Considering the contract as a whole, it is clear that the parties intended to treat Traditions as a third-

party beneficiary to the employment agreement signed by Huffman. Reed, Funk, and Perry signed identical contracts, and the Court finds that Traditions has standing as a third-party beneficiary to enforce the contracts of Huffman, Reed, Funk, and Perry.

Even if the Court were to apply Oklahoma contract law, the Court would still find that Traditions has standing to enforce the employment agreements. Under OKLA. STAT. tit. 15, § 29, "[a] contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." "It is not necessary that a party be specifically named as a beneficiary or third party beneficiary, but only that the contract be made 'expressly for the benefit of a third person' and 'expressly' simply means 'in an express manner; in direct or unmistakeable terms; explicitly; definitely; directly.'" Hensley v. State Farm Fire & Cas. Co., 398 P.3d 11, 19 (Okla. 2017) (quoting Keel v. Titan Constr. Corp., 639 P.2d 1228, 1231 (Okla. 1981)). A party who meets this standard has standing to enforce a contract as if he were a party to the contract under Oklahoma contract law. Shebester v. Triple Crown Insurers, 826 P.2d 603, 610 (Okla. 1992). The Court has already determined that the parties intended to include Traditions as a party to the employment agreements through the use of the term "affiliate," and the choice of Oklahoma or Texas law has no bearing on the outcome of this issue. Defendants have not asserted any other arguments for the dismissal of Traditions' breach of contract claims (counts 1 and 2), and the motion to dismiss is denied as to defendants' request to dismiss these claims.

## B.

Defendants argue that Traditions has failed to state claims against all defendants under the federal Defend Trade Secrets Act, 18 U.S.C. §1831 et seq. (DTSA), or the Oklahoma Uniform Trade Secrets Act, OKLA. STAT. tit. 78, § 85 et seq. (OUTSA). They contend that Traditions has made

conclusory allegations concerning the existence of a trade secret that do not satisfy federal pleading standards, because Traditions has failed to identify the trade secrets that defendants have allegedly misappropriated. Traditions responds that it is not required to publicly disclose the trade secrets that were misappropriated, and Traditions asserts that it has given defendants sufficient notice of the trade secrets at issue in this case and how defendants allegedly misappropriated those trade secrets.

The DTSA defines a "trade secret" as:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if --

> > (A) the owner thereof has taken reasonable measures to keep such information secret; and

> > (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. § 1839(3). To state a claim under the DTSA, a plaintiff must allege: "(1) the existence of a trade secret; (2) the acquisition, use, or disclosure of the trade secret without plaintiff's consent; and (3) the individual acquiring, using, or disclosing the trade secret knew or should have known that the trade secret was acquired by improper means." API Americas Inc. v. Miller, 380 F. Supp. 3d 1141, 1148 (D. Kan. 2019). Oklahoma has adopted the Uniform Trade Secrets Act (OUTSA), which defines a "trade secret" as:

> information, including a formula, pattern, compilation, program, device, method, technique or process, that:

a. derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and

b. is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

OKLA. STAT. tit. 78, § 86(3). Oklahoma courts consider the factors in the Restatement (First) of Torts, § 757, Comment B, to assist them in determining whether information is a trade secret. Those factors are:

(1) the extent to which the information is known outside of the business; (2) the extent to which the information is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and to competitors; (5) the amount of effort or money expended by the business in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

MTG Guarnieri Mfg., Inc. v. Clouatre, 239 P.3d 202, 210 (Okla. Civ. App. 2010).

The amended complaint alleges that Traditions provides palliative care and hospice services in multiple states through its subsidiaries located in 18 states. Traditions claims that it maintains confidential business information that includes employee information, patient names, treatment information, patient referral sources and patterns, prospective referral partners, preferences in treatment methods, vendor pricing and related information, and marketing strategies. Dkt. # 32, at 5-6. Traditions alleges that access to the confidential business information is limited to persons with a password to the database, and each person can see only the information relevant to his or her specific market. Id. at 6. These allegations give defendants adequate notice of the basis for Traditions' trade secret claims, and defendants have cited no authority suggesting that a plaintiff alleging a trade secrets is required to make detailed disclosures about the alleged trade secrets in order to state a claim at the pleading stage. In fact, courts have typically found that it is sufficient

15

to generally identify trade secrets at the pleading stage, as long as sufficient information is provided to allow the defendant to seek more specific information during pretrial discovery. <u>Credit Sage LLC v. Credit Wellness LLC</u>, 2024 WL 99474, *4 (D. Wyo. Jan. 9, 2024); <u>Surgenex, LLC v. Predictive Therapeutics, LLC</u>, 462 F. Supp. 3d 1160, 1171 (D. Utah 2020); <u>Select Energy Servs., Inc. v. Mammoth Energy Servs., Inc.</u>, 2019 WL 1434586 (W.D. Okla. Mar. 29, 2019).

Defendants also argue that Traditions has failed to adequately allege that any of the trade secrets relate to a product in or intended for interstate commerce, and this is an essential element of a claim under the DTSA. Dkt. # 40, at 13-14. Traditions responds that it has alleged that it operates nationwide and that it has tied the allegedly misappropriated trade secrets to its nationwide operations. Dkt. # 49, at 14-15 The Court has reviewed the amended complaint and finds that Traditions' allegations adequately support an inference that Traditions' trade secrets are related to a product that is sold or used in interstate commerce. Information concerning specific patients and local trends in medical treatment may likely not concern interstate commerce, but Traditions alleges that it tracks referral patterns, hospice utilization, market data and admission trends, and patient outcomes across its offices nationwide. Dkt. # 32, at 5-6. Courts have found that products or information that are intended to be used across multiple states as part of the plaintiff's business operations can satisfy the "relation to interstate commerce" requirement for a DTSA claim. <u>Luckyshot LLC v. Runnit CNC Shop, Inc.</u>, 2020 WL 5702281, *5 (D. Colo. Sep. 24, 2020); <u>Video Gaming Technologies, Inc. v. Castle Hill Studios LLC</u>, 2018 WL 3437073, *6 (N.D. Okla. July 17, 2018); <u>Blue Star Land Servs., LLC v. Coleman</u>, 2017 WL 6210901, *7 (W.D. Okla. Dec. 8, 2017). While the amended complaint could have been clearer about the interstate commerce aspect of Traditions' DTSA claim, the Court finds that the amended complaint sufficiently alleges an interstate

nexus for the services, information, or products that were allegedly misappropriated by defendants. Defendants' motion to dismiss is denied as to Traditions' DTSA claim (count 3).

The elements of an OUTSA claim are similar to the elements of a DTSA claim under federal law, but the OUTSA has an additional element requiring the plaintiff to show the "use" of the trade secret by the defendant to the detriment of the plaintiff. Tri-State Floors, Inc v. Old Rule Serv., LLC, 2022 WL 4653717, *12 (N.D. Okla. Sep. 30, 2022); Pre-Paid Legal Servs., Inc. v. Cahill, 924 F. Supp. 2d 1281, 1288 (N.D. Okla. 2013). Defendants' primary argument in support of its request to dismiss Traditions' OUTSA claim is that Traditions has failed to adequately allege that defendants' misappropriated Traditions' trade secrets.[5] Defendants have selectively chosen factual allegations in the amended complaint to suggest that Traditions is merely alleging that the individual defendants had the opportunity to access information that Traditions now asserts is a trade secret. Dkt. # 40, at 16. Defendants also mention Traditions' allegation that medical binders "mysteriously disappeared" from a facility to which Menefee had been assigned, and defendants claim that Traditions' allegation that Menefee had something to do with the missing binders is merely speculative. Dkt. # 32, at 31; Dkt. # 40, at 17.

The Court has reviewed the amended complaint and finds that Traditions has adequately alleged that the individual defendants misappropriated trade secrets for the benefit of Luminos. Traditions claims that Huffman and Reed accessed commission reports shortly before they left to work for Luminos, and Huffman in particular accessed other confidential business information at

---

[5]      Defendants also allege that Traditions has failed to identify the alleged trade secrets with adequate specificity. The Court has already disposed of this argument in the context of Traditions' DTSA claim and finds no need to separately consider whether Traditions' allegations sufficiently identify the alleged trade secrets for the purpose of an OUTSA claim.

"an alarming rate." Dkt. # 32, at 25. Reed and Perry also accessed and possibly downloaded confidential information belonging to Traditions shortly before they resigned. Id. at 26-27. Traditions alleges that the misappropriation of information was coordinated with Funk, Menefee, and Perry's departure for new employment with Luminos, and Huffman allegedly continued to access confidential after he resigned from his employment with Traditions. Id. at 25. Traditions alleges that each of the individual defendants is actually using the misappropriated trade secrets for the benefit of Luminos and to build their own business operations. Id. at 27. These allegations are sufficient to state a plausible claim that the individual defendants violated the OUTSA by misappropriating trade secrets belonging to Traditions or by using information that they should have known was acquired by improper means. The motion to dismiss is denied as to the OUTSA claim (count 4).

## C.

Defendants argue that Traditions has failed to state claims for misappropriation of intangible property, unfair competition, tortious interference with contractual or business relationships, breach of fiduciary duty, or civil conspiracy.[6] Defendants also contend that all or some of these claims are preempted by the OUTSA. Dkt. # 40, at 20. Traditions responds that it has identified the confidential business information giving rise to these claims with sufficient particularity at the pleading stage. Dkt. # 49, at 23-25. Traditions acknowledges that the OUTSA can preempt state

---

[6]     As previously noted, the Court will assume that Traditions' claims of misappropriation of intangible property and breach of fiduciary duty are asserted against the individual defendants only, and the Court will assume that the claims of tortious interference, unfair competition, and civil conspiracy are asserted against all defendants.

law tort claims, but it argues that its tort claims are based on the alleged misappropriation of information that does not qualify as a trade secret under the OUTSA. Id. at 29-30.

Before considering defendants' arguments as to any specific claims, the Court will consider whether Traditions' state law tort claims are preempted by the OUTSA. The OUTSA "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." OKLA. STAT. tit. 78, § 92(A). However, the OUTSA does not affect "other civil remedies that are not based upon misappropriation of a trade secret." OKLA. STAT. tit. 78, § 92(B)(2). The Oklahoma Supreme Court has clarified that the OUTSA leaves in place existing tort remedies for claims that do not involve "trade secrets" as that term is defined in the OUTSA. American Biomedical Group, Inc. v. Techtrol, Inc., 374 P.3d 820, 827 (Okla. 2016). The Court has reviewed the amended complaint and the parties' arguments, and finds that it would be premature to dismiss claims based on possible preemption under the OUTSA. Defendants may be correct that some of Traditions' tort claim are preempted by the OUTSA, but defendants have cited no authority suggesting that a plaintiff is required to choose between remedies at the pleading stage. Federal Rule of Civil Procedure 8(a)(3) expressly allows a plaintiff to plead "relief in the alternative or different types of relief," and plaintiff is not required to choose between potentially viable claims at this stage of the case. The Court will reserve a ruling on possible preemption under the OUTSA until Traditions has had an opportunity to conduct discovery and determine whether it intends to proceed with all of the claims alleged in the amended complaint.[7]

---

[7]    Should Traditions choose to proceed with all of its claims, the burden will be on Traditions to differentiate between the factual basis for its tort and OUTSA claims, and Traditions will be required to identify specific trade secrets or confidential business information supporting each of its claims. It will not be the Court's job to sift through the evidence when ruling on a motion for summary judgment to determine whether Traditions has an adequate factual basis for each of its claims.

**Misappropriation of Intangible Property and Unfair Competition (Counts 5 and 7)**

Defendants assert that Traditions' allegations, if accepted as true, would merely support an inference that the individual defendants had access to trade secrets, and defendants claim that Traditions is simply asking the Court to assume that defendants actually took the additional step of misappropriating confidential or proprietary information belonging to Traditions. Dkt. # 40, at 15-16. Traditions responds that it has adequately alleged that the individual defendants had access to and actually downloaded confidential information in violation of their employment agreements, and these allegations are sufficient to state claims for misappropriation of intangible property and unfair competition. Dkt. # 49, at 24.

In American Biomedical Group, the Oklahoma Supreme Court explained that the tort of conversion does not provide a claim for the theft or misappropriation of intangible property, but Oklahoma courts had previously recognized a separate claim for the misappropriation of business information in ABC Coating Co. v. J. Harris & Sons Ltd., 747 P.2d 266 (Okla. 1986). American Biomedical Group, 374 P.3d at 825. Following the Restatement (First) of Torts, Section 757, any person who receives confidential information and "who is in a confidential relationship or obtains the information through improper means" may be liable in tort, even if the information would not qualify as a trade secret. Id. This type of claim is not preempted by the OUTSA as long as the claim is premised upon confidential business information that does not qualify as a trade secret. Aceco Valves, LLC v. Neal, 2024 WL 253672 (W.D. Okla. Jan. 23, 2024); Brand Servs., LLC v. Irex Corp., 909 F.3d 151, 158 n.4 (5th Cir. 2018). Traditions also alleges a separate claim for unfair competition under state law. The parameters of a claim for unfair competition under Oklahoma law are not well

developed, but many states recognize "[a]n unfair competition claim involving misappropriation usually concern[ing] the taking and use of the plaintiff's property to compete against the plaintiff's own use of the same property . . . ." Roy Export Co. Establishment of Vaduz, Liechtenstein v. Columbia Broadcasting System, 672 F.2d 1095, 1105 (2d Cir. 1982). As a matter of Oklahoma law, a court should consider whether the information used by the defendant "was confidential and not readily available to competitors," which can in some circumstances include customer lists of the plaintiff. Chilcutt Direct Marketing, Inc. v. A. Carroll Corp., 239 P.3d 179, 182 n.2 (Okla. Civ. App. 2010). The Oklahoma Supreme Court has held that the identity of customers solicited by or known to a former employee is not confidential business information as long as the employee relies on his or her memory to contact the customers, rather than a list of customers generated by the employer. Central Plastics Co. v. Goodson, 537 P.2d 330, 334 (Okla. 1975).

Defendants argue that Traditions fails to identify what specific confidential information was allegedly misappropriated by the individual defendants and how the alleged misappropriation took place. Dkt. # 40, at 16. Defendants also claim that Traditions' claims of misappropriation of intangible property and unfair competition are based on speculative allegations that the individual defendants misappropriated confidential business information merely because they had access to such information in their capacity as former employees of Traditions, and they argue that this is not sufficient to state claims for misappropriation of business information or unfair competition. Id. The Court has reviewed plaintiff's amended complaint and finds that Traditions' 50 page pleading contains sufficient allegations to state claims for misappropriation of business information and unfair competition. Traditions alleges that Huffman and Reed accessed confidential business information belonging to Traditions an unusual number of times while they were simultaneously conspiring to

lure employees away from Traditions.  Dkt. # 32, at 24-25.  Huffman allegedly coordinated the resignations of Reed and Menefee while continuing to access Traditions' confidential business over 450 times after his own resignation.  Id. at 26.  Reed also accessed files containing alleged trade secrets and confidential business information before her resignation, and Traditions alleges that Huffman, Reed, and the other individual defendants are actively using the misappropriated information to directly compete against Traditions and encourage patients to leave Traditions for Luminos. Id. at 27.  Traditions alleges that Luminos was able to solicit patients from Traditions that Luminos would not have been able to identify without confidential patient records that were maintained by Traditions.  Id. at 28.  These allegations are sufficient at the pleading stage to state claims for misappropriation of business information and unfair competition.  Traditions has generally identified the nature of the trade secrets and business information at issue, and the allegations of the amended complaint specifically identify how the individual defendants used or may have used the misappropriated information to the detriment of Traditions.  Traditions has stated plausible claims for misappropriation of business information and unfair competition.

**Tortious Interference (Count 6)**

Defendants argue that Traditions cannot state a claim for tortious interference with contractual or business relationships under theories that defendants interfered with Traditions' relationship with its patients or its former employees.  Defendants argue that the relationship between a medical professional and a patient is an at-will relationship that cannot be used to support a tortious interference claim.  Dkt. # 40, at 19.  As to Traditions' contractual relationship with its former employees, defendants contend that Traditions' factual allegations are speculative and Luminos could have contacted Traditions' employees without violating the law.  Id. at 20.

Traditions responds that it has adequately alleged that Luminos maliciously interfered with Traditions' relationships with its employees and referral sources, not just patients, and the amended complaint specifically identifies the contractual and business relationship with which defendants have interfered. Dkt. # 49, at 25-26.

To establish a claim for tortious or malicious interference with a business relationship, Traditions must allege the following elements: "1) interference with a business or contractual right; 2) malicious and wrongful interference that is neither justified, privileged, nor excusable; and 3) damages proximately sustained as a result of the interference." Tuffy's, Inc. v. City of Oklahoma City, 212 P.3d 1158, 1165 (Okla. 2009). Oklahoma courts define "interference" as discouraging a third party from entering into a business relationship or intentionally acting to interfere with a person's business relationship or expectancy, and the intentional interference element of the claim requires a finding of bad faith on the part of the interferor. Loven v. Church Mut. Ins. Co., 452 P.3d 418, 426 (Okla. 2019). A tortious interference claim cannot be asserted against a person who was a party to the contractual or business relationship that was allegedly interfered with and such a claim is cognizable only against a third party to the contract or business relationship. Wilspec Technologies, Inc. v. DunAn Holding Group, Co., 204 P.3d 69, 74 (Okla. 2009).

Defendants rely on Bristow Endeavor Healthcare, LLC v. Blue Cross and Blue Shield Association, 2016 WL 3199520 (N.D. Okla. June 8, 2016), for the proposition that Oklahoma law does not give rise to a contractual relationship between a physician and patient, and defendants believe that this conclusively disposes of Traditions' tortious interference claim as to alleged interference with Traditions' clients. Id. at *9 (citing Cohlmia v. St. John Med. Ctr., 693 F.3d 1269, 1285 (10th Cir. 2012)); Dkt. # 40, at 19. However, defendants vastly overstate the holding of

23

Bristow Endeavor, and that decision, even if treated as precedential, would not support a broad rule that interference with the relationship between a medical professional and a patient would never support a tortious interference claim. Instead, the court in Bristow Endeavor found that the plaintiff had failed to include any factual allegations identifying what contractual or business relationships were being interfered with by the defendant, and alleged interference in the contract between the plaintiff and defendant could not form the basis for a tortious interference claim. Bristow Endeavor, 2016 WL 3199520 at *9. In this case, Traditions alleges that it had business or contractual relationships with its former employees and its referral sources, and the amended complaint includes specific allegations identifying the former employees and referral sources. Unlike in Bristow Endeavor, Traditions has not attempted to base its tortious interference claim on the defendant's alleged interference with a contract between the named plaintiff and defendant but, instead, Traditions alleges that Luminos interfered with contractual or business relationships to which it was a third-party. Traditions has made sufficient factual allegations that Luminos maliciously interfered with Traditions' relationships with patients, employees, and referral sources, and defendants' request to dismiss Traditions' tortious inference claim (count 6) is denied.

**Breach of Fiduciary Duty (Count 8)**

The individual defendants argue that Traditions has failed to allege any facts suggesting that it had a fiduciary relationship with its former employees. Dkt. # 40, at 21. Traditions responds the individual defendants were high-level employees who occupied management positions, and Traditions asserts that its factual allegations are sufficient at this stage of the case to support an inference that the individual defendants breached a duty of loyalty they owed to their employer. Dkt. # 49, at 28.

The elements of a breach of fiduciary duty claim are "(1) the existence of a fiduciary relationship; (2) a breach of fiduciary duty; and (3) the breach of a fiduciary duty was the direct cause of damages." Graves v. Johnson, 359 P.3d 1151, 1155 (Okla. Civ. App. 2015). Under Oklahoma law, "[f]iduciary or confidential relationship has a broad meaning that includes legal, contractual, formal, and informal relations and exists when one person trusts and relies upon another." Horton v. Hamilton, 345 P.3d 357, 364 (Okla. 2015). A breach of fiduciary duty claim must be based on facts independent from the facts giving rise to a breach of contract claim. Advance Research Chemicals, Inc. v. Praxair, Inc., 2005 WL 8175015 *5 (N.D. Okla. Mar. 30, 2005); see Swimwear Solution, Inc. v. Orlando Bathing Suit, LLC, 309 F. Supp.3d 1022 (D. Kan. Mar. 30, 2018) (breach of contract and fiduciary claims can be pled in parallel, but the tort claim must be independent of the breach of contract claim); Advanced Comfort Technologies, Inc. v. London Luxury, LLC, 2017 WL 6060634 (D. Utah Dec. 6, 2017).

The Court finds that it is unnecessary to decide whether the individual defendants owed a fiduciary duty to Traditions, because the breach of fiduciary duty claim is not based on facts independent of the breach of contract claim. Plaintiff's breach of fiduciary claim is based on the same factual allegations as their breach of contract claims, specifically the alleged misappropriation of trade secrets or confidential business information and the interference with Traditions' business on behalf of Luminos. Traditions simply characterizes the same conduct as the breach of a duty to loyalty to the company, rather than as a breach of the individual defendants' employment contracts. Dkt. # 32, at 44. Defendants clearly raised this issue in their motion to dismiss, and Traditions has not made any attempt to distinguish its breach of fiduciary duty claim from its breach of contract

25

claims. Traditions' breach of fiduciary duty claim is not based on facts independent of Traditions' breach of contract claims, and the breach of fiduciary duty claim (count 8) should be dismissed.

**Civil Conspiracy (Count 9)**

Defendants argue that Traditions has not alleged sufficient facts suggesting that there was an agreement among the individual defendants to harm Traditions, and they ask the Court to dismiss Traditions' civil conspiracy claim. Dkt. # 40, at 22-23. Traditions responds that the amended complaint contains allegations that at least two of the individual defendants agreed to solicit employees from Traditions on behalf of Luminos, and Traditions asserts that the defendants collectively engaged in overt acts in furtherance of a conspiracy. Dkt. # 49, at 28-29.

Under Oklahoma law, a civil conspiracy "consists of a combination of two or more persons to do an unlawful act, or to do a lawful act by unlawful means." Brock v. Thompson, 948 P.2d 279, 294 (Okla. 1997). To state a civil conspiracy claim, a plaintiff is required to allege that two or more persons agreed to accomplish a particular objective, that they engaged in one or more overt acts, and that the plaintiff suffered damages as a proximate result of the conspiracy. Schovanec v. Archdiocese of Oklahoma City, 188 P.3d 158, 175 (Okla. 2008).

The Court finds that Traditions has alleged sufficient facts to support an inference that Luminos and the individual defendants agreed to solicit patients and employees from Traditions and to harm Traditions' business, and Traditions has adequately alleged a civil conspiracy claim against Luminos. Defendants argue that Traditions has simply alleged "many acts by various defendants" without actually including any "specific facts showing an agreement" among the defendants to harm Traditions' business. Dkt. # 54, at 11. Paragraphs 70 through 116 of the amended complaint set out in detail the alleged conduct of Luminos and the individual defendants and, accepted as true for

the purpose of ruling on a motion to dismiss, these allegations support an inference that the individual defendants acted in a highly coordinated manner to harm Traditions as they left their employment to begin new jobs at Luminos.  At this stage of the case, Traditions is not required to allege specific facts concerning defendants' state of mind to engage in a conspiracy, and the allegations of the amended complaint are sufficient to support an inference that defendants conspired with the objective of unlawfully harming Traditions' business operations.  See Fed. R. Civ. P. 9(b). Defendants' motion to dismiss is denied as to the dismissal of Traditions' civil conspiracy claim.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. # 40) is **granted in part** and **denied in part**; the motion is granted as to the dismissal of Traditions' breach of fiduciary duty claim (count 8) and is denied in all other respects.

**IT IS FURTHER ORDERED** that Plaintiff Traditions Health, LLC's Motion to Strike or Disregard New Arguments in Defendants' Reply Brief (Dkt. # 61) is **denied**.

**DATED** this 11th day of December, 2024.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE